## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHN DOE | CIVIL ACTION |
| VERSUS | NO. 23-1348 |
| ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND | SECTION: "P" (3) |

### ORDER AND REASONS

Plaintiff, John Doe, filed a Motion to Compel Defendant's Production of Documents in Response to Subpoena.[1] The Administrators of the Tulane Educational Fund ("Tulane") filed an opposition,[2] and Doe replied.[3] The Court heard oral argument.  Based on the submissions of the parties, the record, and oral argument, and for the reasons below, the motion is granted in part and denied in part.

### I.   Introduction

While a Tulane student, John Doe was subject to charges of sexual misconduct relative to two female students, "Sue Roe" and "Jane Doe".[4] On February 16, 2022, John Doe received a "Notice of Procedural Review Meeting," which stated that "on or around September 2021 and or around Sunday, February 6, 2022 you engaged in non-consensual sexual contact with two different female students at off-campus

---

[1] Rec. Doc. 23.
[2] Rec. Doc. 25.
[3] Rec. Doc. 26.
[4] Rec. Doc. 1, ¶ 2.

locations."[5] The notice charged him with Sexual Assault.[6] On February 18, 2022, Tulane sent John Doe a letter imposing a "campus ban" that extended to university-sponsored activities.[7]

On February 18, 2022, Tulane sent John Doe a Notice of Investigation and Charges, which identified Sue Roe and Jane Doe, and charged John Doe with two counts of "Sexual Assault" and one count of "Lewd/Obscene Conduct."[8] Tulane's Final Investigation Report found John Doe responsible for Sexual Contact and Sexual Assault.[9] On May 6, 2022, John Doe was expelled, permanently banned from campus, and his academic transcript was permanently marked with a "notation of expulsion."[10] John Doe's appealed, but his appeal was found to be "without merit."[11]

John Doe sued Tulane under Title IX of the Education Amendments of 1972, alleging that he was "subjected to a biased, prejudiced and unfair process in violation of Title IX designed to find him, the male, responsible for sexual misconduct and punished severely for it."[12] He also sued Tulane for breach of contract, alleging that Tulane violated his "contractual right to due process by failing to follow its own binding procedures with respect to the Sue Roe and Jane Doe complaints against Plaintiff."[13]

---

[5] Rec. Doc. 1, ¶ 214.
[6] Rec. Doc 1, ¶ 216
[7] Rec. Doc 1, ¶ 273.
[8] Rec. Doc. 1, ¶¶ 255-59.
[9] Rec. Doc. 1, ¶ 427.
[10] Rec. Doc. 1, ¶ 430.
[11] Rec. Doc. 1, ¶445.
[12] Rec. Doc. 1, ¶ 519.
[13] Rec. Doc. 1, ¶ 526.

## II.    LAW AND ANALYSIS

### A.  Procedural Posture.

John Doe used a subpoena duces tecum to request documents from Tulane. John Doe relied on this device, rather than requests for production, because the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. 1232g, contemplates obtaining either a subpoena or court order to obtain protected documents. FERPA prohibits the federal funding of schools that have a policy or practice of permitting the release of students' education records without their parents' written consent. *E.g., Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002). FERPA does not modify the scope of discovery, but it does impose certain procedural requirements on schools. One of those requirements allows schools to produce protected documents "in compliance with judicial order, **or** pursuant to any lawfully issued subpoena." 20 U.S.C.A. § 1232g(b)(2)(B) (emphasis supplied).[14]

Subpoenas can be attractive to litigants seeking documents because they do not come with the same delays and procedures associated with requests for production. But most courts in the Fifth Circuit have been reluctant to allow a litigant to rely on subpoena duces tecum to obtain documents from a party. *See, e.g., Powell v. United States*, No. 09-1873, 2009 WL 5184338, at *1 (E.D. La. Dec. 22, 2009); *see also Stemmons Enter., L.L.C. v. Fisker, Inc.,* No. 4:22-CV-01487, 2023 WL 7545223, at *1 (S.D. Tex. Nov. 13, 2023) ("Third-party discovery is 'not meant to provide an end-run around the regular discovery process under Rules 26 and 34.'") (quotation

---

[14] Even then, however, certain notification requirements apply.

omitted); *Thomas v. IEM, Inc.*, 2008 WL 695230, at *2 (M.D. La. Mar. 12, 2008); *Young v. Ershick*, No. 4:21-CV-00644-ALM, 2022 WL 1557666, at *1 (E.D. Tex. May 17, 2022) (quotation omitted); *see also* § 2452 Relation of Rule 45 to the Discovery Rules, 9A Fed. Prac. & Proc. Civ. § 2452 (3d ed.) ("a subpoena is necessary to compel someone who is not a party to appear for the taking of a deposition or for the production of various material things and electronic information."). And, although courts have allowed party-subpoenas in certain cases, John Doe's case does not present any unusual circumstance that would support his strategy decision to rely on a subpoena instead of a request for production. *Giarratano v. Huntington Ingalls Inc.*, No. CV 22-88, 2023 WL 2898332, at *3 (E.D. La. Apr. 11, 2023) (citing cases and identifying narrow set of circumstances when a subpoena duces tecum may be appropriately directed to a party).

   Although they have some strategy advantages, subpoenas also have some unique limits. Rule 45(d)(1) imposes an affirmative obligation on a party or attorney issuing a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). "The court for the district where compliance is required must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply." *See id.* Some factors involved in the Rule 45 undue burden analysis overlap with those at issue in litigation over requests

for production.[15] A critical difference, however, is that ignoring a subpoena presents greater peril than ignoring a request for production. *See, e.g.*, Fed. R. Civ. P. 45(a)(2) advisory committee's note (1991 amend.) ("Although the subpoena is in a sense the command of the attorney who completes the form, defiance of a subpoena is nevertheless an act in defiance of a court order and exposes the defiant witness to contempt sanctions."). Further, the Rule 45(d)(1) duty is unique to that rule. If the plain text of Rule 45(d)(1) is to be given any effect, therefore, an attorney must take even greater care in drafting subpoenas duces tecum than when drafting requests for production.

The policy reasons that counsel in favor of encouraging parties to use requests for production, rather than party-subpoenas, are especially persuasive in the context of information subject to FERPA.  Requests for production come with safeguards and opportunities for objection and negotiation that carry particular value in this scenario. The Court need not determine, however, whether John Doe should have used a subpoena nor whether his subpoena passes muster under Rule 45. At oral argument, the parties confirmed that they will not be prejudiced by treating the subpoena as a set of requests for production. Thus, the procedural dispute is moot.

---

[15] The Fifth Circuit has identified several factors relative to this inquiry, including: "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

**B.   Scope of Discovery.**

Unless otherwise limited by court order, Rule 26(b)(1) defines the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). When discovery would burden nonparties with the disclosure of personal information, the nonparties' privacy interests must be balanced against the other factors under Rule 26(b)(1). *E.g.*, *Moore v. Smith*, No. CV 17-5219, 2019 WL 13275395, at *3 (E.D. La. Oct. 30, 2019); *In re: Xarelto (Rivaroxaban) Prod. Liab. Litig.*, 313 F.R.D. 32, 34 (E.D. La. 2016). Privacy interests "are not to be weighed lightly." *See Select Oilfield Servs., LLC v. Total Marine Servs. of Jefferson, Inc.*, No. CV 23-2431, 2024 WL 1701941, at *8 (E.D. La. Apr. 19, 2024).

**A.     Requests relative to other sexual misconduct cases (Request Nos. 1-7).**

Request Nos. 1-7 (as narrowed) seek information about other sexual misconduct cases involving female respondents. John Doe correctly asserts that comparator evidence is relevant to his claim that he was treated differently because of his sex.[16] John Doe's narrowing of his requests, however, does not go far enough to

---

[16] Rec. Doc. 23-1 at 9.

comply with Rule 26's discovery parameters. John Doe must demonstrate that he was "treated less favorably than similarly situated" female respondents. *Daywalker v. UTMB at Galveston*, No. 22-40813, 2024 WL 94297, at *7 (5th Cir. Jan. 19, 2024). But he also must show that this occurred "under nearly identical circumstances." *See id.* Thus, cases with only tenuous similarities are not relevant to John Doe's claims.

Several of John Doe's requests are overly broad because they seek information about sexual misconduct cases that did not involve the formal investigation procedure at issue in John Doe's case. John Doe does not allege that whether Tulane begins a formal investigation is based on the respondent's sex. Instead, he alleges that Tulane's formal investigation demonstrated bias and discrimination against him based on sex.[17] Only cases involving formal investigations, therefore, potentially include discoverable evidence relative to John Doe's claims.  But, even within the universe of formal investigations, additional discovery parameters are necessary to comply with Rule 26's balancing test. John Doe's revised discovery requests go too far by demanding "all documents," including "investigation reports," before a threshold determination of similarity is made.[18]

The Court concludes that allowing John Doe sufficient discovery to find out which students (if any) are suitable comparators without unnecessarily impinging on

---

[17] Rec. Doc. 23-1 at 5.

[18] Rec. Doc. 23-8 at 2-8. Indeed, in one of the cases relied on by John Doe, the university first produced basic information as to 30 potential comparators, and the plaintiff then sought further details as to only six of them—a request that the court characterized as "proportional." *See Smith v. Brown Univ.*, No. 1:22-CV-329-JJM-PAS, 2023 WL 6314646, at *2 (D.R.I. Sept. 28, 2023).

the significant privacy interests of students involved in sexual misconduct cases requires a two-step approach. This process will balance John Doe's potential need for information with the Court's need to tailor discovery under Rule 26, including by recognizing the individualized privacy interests at stake in each potential comparator case.

In Step One, discovery will be used to identify which cases, if any, present potential appropriate comparators. At this stage, John Doe may discover information as to the respondent's sex, charges, outcome, and the procedural posture of the proceeding, as well as whether the employees identified in Request Nos. 5-7 had a role in the case. The Court anticipates that it will be sufficient for John Doe to review information relative to: (1) charge letters; (2) outcome letters; (3) appeal outcome letters; (4) documents reflecting the type of procedures used in the case—e.g., notices of hearings and whether cases were consolidated; and (5) documents identifying the role (if any) of the individuals identified in Request Nos. 5-7.[19] Tulane need not produce at this stage, however, investigation reports or other documents that delve into the minute details of substantive allegations. Relatedly, at this stage, Tulane may redact the student names at issues. To the extent that a document contains information that goes beyond these parameters, the document may be redacted before production.

In Step Two, discovery will produce additional information about the cases that appear to be plausible comparators under governing precedent. John Doe will focus

---

[19] These individuals allegedly were involved in the investigation of John Doe.

his discovery requests on the actual potential comparators at issue, including by re-urging his argument that further details are necessary with respect to specific cases. As part of their meet-and-confer process relative to any disputes at the second stage, Tulane is to provide John Doe with an index of withheld file materials, and a description of each withheld document sufficient to allow John Doe to assess its nature and potential relevance. With the benefit of the specific identification of potential comparators (if any), the Court can tailor its Rule 26 assessment to the facts of each potential comparator case or document, rather than relying on generalizations as to whether, e.g., investigation reports[20] in the abstract are discoverable. This approach will allow John Doe access to discoverable information necessary to identify potential comparators while ensuring recognition of the significant privacy interests at issue. If FERPA applies to a particular document, the process will also give the affected student(s) reasonable notice and an opportunity to object.

### B. Records involving other matters in which Sue Roe and Jane Doe were complainants (Request Nos. 8-10).

Request Nos. 8-10 address other cases in which Jane Doe and Sue Roe were complainants. Copies of Jane Doe and Sue Roe's disciplinary files have been produced such that John Doe has copies of all charges brought by them against other students.[21] Thus, Request Nos. 8 and 9 are moot.

---

[20] Investigation reports may contain details, including photographs and detailed narratives, in which affected students have a particularly strong privacy interest.
[21] Rec. Doc. 25 at 3 n.2. Tulane acknowledged that it is possible that a student could file an anonymous complaint such that the university would be unable to trace it to either student.

The discovery dispute as to Request No. 10, however, has not been resolved. That request relates to a particular complaint by Jane Doe against H.W. John Doe does not argue that H.W. is a potential comparator. Instead, John Doe argues that the H.W. complaint demonstrates that Jane Doe has a history of unwarranted allegations stemming from failed relationships. John Doe suggests that Jane Doe's complaint against him arises from on a similar relationship pattern.[22] Thus, he maintains, the H.W. case is relevant to Jane Doe's credibility. This argument conflates John Doe's lawsuit against Tulane with his substantive defense in the misconduct proceedings.

The circumstances of Jane Doe's alleged relationship with and complaint against H.W. arguably may be relevant to the credibility of her complaint against John Doe.[23] But John Doe's alleged sexual misconduct is not on trial in this case. Untangling the potential relevance (if any) of Jane Doe's complaint against H.W. requires multiple analytical steps, including ascertaining whether Tulane was on notice of an alleged history of false reports by Jane Doe when it considered her complaint against John Doe. Moreover, the two cases are dissimilar. The H.W. complaint involved a COVID-related restriction on social gatherings such that any inference relative to John Doe's case may be tenuous, at best. But the privacy interests in a social-gathering investigation are less significant than those at issue in an alleged case of sexual misconduct. And John Doe need not pore over the details of

---

[22] Rec. Doc. 23-1, p. 12.
[23] The Court does not reach this issue in determining that limited information is discoverable at this stage.

the investigation to determine whether Tulane was on notice of Jane Doe's alleged potential credibility issues when it investigated John Doe. Accordingly, the Court will permit John Doe to obtain any outcome letters relative to this case, as well as documents reflecting statements made by Jane Doe relative to the H.W. complaint.[24]

## III. Conclusion

For these reasons,

**IT IS ORDERED** the motion is **GRANTED IN PART.** The parties are to proceed with discovery under the two-step process outlined above and subject to the limitations described herein.

**IT IS FURTHER ORDERED** that the parties are to work together to establish an agreed-upon procedure for complying with FERPA's procedural requirements. If the parties cannot reach an agreement, they are to schedule a status conference with the Court.

**IT IS FURTHER ORDERED** that the motion is **DENIED** in all other respects **WITHOUT PREJUDICE** to John Doe's right to re-urge certain arguments once he has had an opportunity to identify appropriate potential comparators and the nature of any withheld documents.

New Orleans, Louisiana, this 31st day of May, 2024.

EVA J. DOSSIER
UNITED STATES MAGISTRATE JUDGE

---

[24] To the extent the documents contain additional information that Tulane maintains is not discoverable, they may be redacted.