SSUNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JOHN DOE** | * | **CIVIL ACTION NO. 2:23-cv-01348** |
| | * | |
| **VERSUS** | * | **SECTION: P (4)** |
| | * | |
| **THE ADMINISTRATORS OF THE** | * | **JUDGE DARREL JAMES PAPILLION** |
| **TULANE EDUCATIONAL FUND** | * | |
| | * | **MAGISTRATE JUDGE** |
| | * | **EVA J. DOSSIER** |

<u>**DEFENDANT'S MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**</u>

Plaintiff is a former student of Tulane University who was disciplined after sexually assaulting two different female students. In his Complaint [Rec. Doc. 1], Plaintiff asserts two claims—violation of Title IX of the Education Amendments of 1972 ("Title IX") and breach of contract—against Defendant, The Administrators of the Tulane Educational Fund ("Tulane"), arising from these disciplinary proceedings. But after conducting 28 depositions and exchanging approximately 22,000 documents, the undisputed material facts firmly establish that (1) Plaintiff was afforded every process and right entitled to him under the law and Tulane's Code of Student Conduct (and was actually afforded far beyond what he was entitled to); and (2) Tulane's disciplinary findings were based on statements from Plaintiff's own witnesses (who stated that Plaintiff admitted that he blacked out and did not recall the nights in question and that he conceded he had done whatever the two victims alleged) and Plaintiff's own text messages (in which he apologized to one of the victims, admitted to a friend that he had done what the victim alleged, and called it "the worst mistake of his life"). Both of Plaintiff's claims fail as a matter of law.

**FACTUAL BACKGROUND**

I.    **Plaintiff sexually assaults two different female students over a six-month period.**

Plaintiff is a former student of Tulane University who sexually assaulted two female students,

Sue Roe and Jane Doe, in their senior year of college.[1] The first assault occurred on August 23-24, 2021 at Ms. Roe's off-campus residence.[2] Plaintiff and Ms. Roe had been at a birthday party in downtown New Orleans prior to going back to Ms. Roe's apartment.[3] That night, Plaintiff and Ms. Roe had consensual sex, but after falling asleep, she was awoken by Plaintiff's fingers inside of her vagina.[4] Despite repeatedly pushing Plaintiff off of her and telling him "no," Plaintiff kept assaulting her.[5] Plaintiff proceeded to masturbate in front of her before she fled her room and had her roommate kick Plaintiff out of her house.[6] ███████████████████████████████

███████████████████████████████████████████████████████████

The second assault occurred on February 2-3, 2022 at Plaintiff's off campus house.[8] Plaintiff and Jane Doe went to Plaintiff's apartment after Plaintiff had been out drinking at bars for his birthday.[9] After going back to his house, Ms. Doe and Plaintiff had consensual sex.[10] He asked for more sex; she said no, fell asleep, and woke to him masturbating on her while sexually assaulting her.[11] He then "touched his penis to [her] butt area as he was squeezing [her] legs and butt and took the blanket off of [her]" more than once.[12] After the assault, Ms. Doe was "afraid of confronting him in that moment" and tried to go back to sleep.[13] The next day, Ms. Doe woke up and left "in a daze."[14]

---

[1] Plaintiff's Depo. dated Nov. 7, 2025 at 25:22-24; 26:23-27:1; 60:16-61:17, excerpts attached as **Exhibit A,** & Plaintiff's Nov. 7 Depo. Ex. 9 (Notice of Investigation Letter), attached as **Exhibit A-1**.

[2] *Id.* at 36:9-19; Sue Roe's Depo at 31:9-25, excerpts attached as **Exhibit B**.

[3] *Id.*

[4] *See* **Ex. B** Sue Roe's Depo. at 33:2-6; 35:12-21; 95:4-96:7 & Sue Roe's Depo. Exhibit 16 (Sue Roe's Interview Transcript from Tulane's Investigation), pages 1-17, attached as **Exhibit B-1**.

[5] *Id*.

[6] *Id.* at 35:21-36:5.

[7] Brian Hudson's Depo. at 50:8-60:1, excerpts attached as **Exhibit C**.

[8] *See* **Ex. A**, Plaintiff's Nov. 7 Depo. at 38:10-17.

[9] Plaintiff's Nov. 6 Depo. at 163:3-169:25, excerpts attached as **Exhibit D**.

[10] Jane Doe's Depo at 72:13-17; 117:7-119:25; 125:14-127:19; 243:4-12, excerpts attached as **Exhibit E,** & Jane Doe's Depo. Ex. 22 (Jane Doe's Interview Transcript from Tulane's Investigation), pages 1-21, attached as **Exhibit E-1**.

[11] *Id*.

[12] *See* **Ex. E** at 126:5-127:19.

[13] *Id.* at 133:10-13; 135:1-10.

[14] *Id.* at 135:18-137:20.

2

## II.   Jane Doe and Sue Roe report their sexual assaults by Plaintiff to Tulane.

After Ms. Doe's assault, she told a few friends what Plaintiff had done to her.[15]  A couple of those friends were mutual friends with Ms. Roe, and they told her that they had heard that Plaintiff had done something similar to Ms. Roe.[16] Ms. Doe was unaware of this as she did not know Ms. Roe well and they had only seen each other at group social gatherings while at Tulane.[17]  Noa B., was one of those mutual friends, and she connected the two women.[18]

Ms. Doe first contacted Ms. Roe by text message on February 7, 2022 after Noa B. introduced them over text message and shared their contact information.[19] After learning what Plaintiff had done to each of them and sharing their trauma, Ms. Roe and Ms. Doe decided to meet with Tulane officials together.[20]       Ms. Roe had not previously reported Plaintiff after her sexual assault in August 2021 because it was such a traumatic experience that she did not want to re-live it by reporting it and wanted to prioritize her own well-being.[21]  But after learning about Plaintiff's assault of Ms. Doe, she realized that Plaintiff was still a danger to the community and felt an obligation to protect others by reporting him.[22]  On February 11, 2022, Ms. Roe and Ms. Doe met with Tulane's Director of Student Conduct, Dr. Christopher Zacharda, and requested a joint formal investigation by Tulane.[23] Both Ms. Roe and Ms. Doe filed formal complaints detailing their sexual assaults by Plaintiff.[24] Dr. Zacharda explained to them that their complaints would be investigated in accordance with Tulane's Code of Student Conduct.[25]  On this same date, Plaintiff withdrew from Tulane and moved out of Louisiana to be at

---

[15] *See* **Ex. E**, Jane Doe's Depo. at 138:14-139:1.

[16] *Id.* at 147:2-20.

[17] *Id.* at 148:4-8.

[18] *See* **Ex. B**, Sue Roe's Depo. at 9:17-12:7.

[19] *See* **Ex. E**, Jane Doe's Depo. at 155:19-157:8; 185:14-1-188:1.

[20] *See* **Ex. B**, Sue Roe's Depo. at 62:16-65:3;

[21] *Id*. at 45:21-46:25.

[22] *Id.* at 59:17-60:19.

[23] *Id.* at 89:13-90:3; 94:17-21 & Dr. Christopher Zacharda's Depo. at 37:4-8, excerpts attached as **Exhibit F**.

[24] *See* **Ex. E**, Jane Doe's Depo. at 227:1-12 & Jane Doe's Depo. Ex. 20 (Jane Doe's Campus Reporting Form against Plaintiff), attached as **Exhibit E-2**; *See* **Ex. B**, Sue Roe's Depo. at 109:17-110:21 & Sue Roe Depo. Ex. 21 (Sue Roe's Campus Reporting Form against Plaintiff), attached as **Exhibit B-2**.

[25] *See* **Ex. F**, Dr. Zacharda's Depo. at 38:10-40:11.

#5965516v1

home with his parents in South Carolina.[26]

### III.    In accordance with Tulane's Code of Student Conduct, Tulane investigates the complaints against Plaintiff.

Because both women's sexual assaults occurred off campus, the investigation process outlined in the "Major Matters" section of Tulane's Code of Student Conduct applied.[27]  This process applies to serious incidents, like sexual assault, in which a student may be suspended or expelled if found responsible. [28] The Code of Student Conduct allows Tulane to consolidate investigations of multiple complaints "[a]t the discretion of the University."[29]  Dr. Zacharda exercised that discretion to consolidate Ms. Roe's and Ms. Doe's complaints due to the commonalities between them.[30] For example, both incidents occurred off campus and involved drinking; both women initially had consensual sex with Plaintiff, fell asleep, and awoke to Plaintiff non-consensually touching them sexually; both women tried to get Plaintiff to stop but could not; Plaintiff masturbated in front of both of them; and both were ultimately sexually assaulted by Plaintiff.[31]

On February 17, 2022, Plaintiff met via Zoom with Dr. Zacharda and was notified of the two women's complaints during what is called a procedural review.[32] During a procedural review meeting, students "learn about the conduct investigation process in detail, including all rights, privileges, and responsibilities" and "also learn about the variety of supportive resources in place to help students navigate this process" and "details about communication and timeline."[33]  Prior to the meeting, Plaintiff retained his current law firm, the Nesenoff and Miltenberg Law Firm, and identified

---

[26] *See* **Ex. A**, Plaintiff's Nov. 7 Depo. at 57:23-35; *See* **Ex. D**, Plaintiff's Nov. 6 Depo. at 198:15-200:6 & Plaintiff's Nov. 6 Depo. Ex. 27 (Plaintiff's Withdrawal Form from Tulane), attached as **Exhibit D-1**.

[27] *See* **Ex. A,** Plaintiff's Nov. 7 Depo. at 46:1-17 & Plaintiff's Nov. 7 Depo. Ex. 7 (The Tulane University Code of Student Conduct 2021-2022), pages 1-81, particularly pages 11-16, attached as **Exhibit A-2**.

[28] *See* **Ex. F**, Dr. Zacharda's Depo. at 40:3-11.

[29] *See* **Ex. A-2**, Plaintiff's Nov. 7 Depo. Ex. 7, page 14.

[30] *Id.*

[31] Plaintiff's Nov. 7 Depo. Ex. 13 (Dr. Zacharda's March 7, 2022 email to Plaintiff and Andrew Miltenberg), attached as **Exhibit A-3**.

[32] *See* **Ex. A**, Plaintiff's Nov. 7 Depo.at 39:3-16 & Plaintiff's Nov. 7 Depo. Ex. 4 (Letter to Plaintiff from Tulane's Office of Student Conduct dated February 16, 2022), attached as **Exhibit A-4**.

[33] *See* **Ex. A-2**, Plaintiff's Nov. 7 Depo. Ex. 7, page 12.

#5965516v1

Andrew Miltenberg as his attorney "advisor."[34] Both Plaintiff and Mr. Miltenberg signed acknowledgments that they understood and agreed to abide by the Code of Student Conduct, which would apply to the investigation.[35] During the procedural review, Dr. Zacharda explained to both Plaintiff and his counsel that Tulane would investigate Ms. Roe's and Ms. Doe's consolidated complaints under the Major Matters procedures outlined in the Code of Student Conduct.[36] Thereafter, Plaintiff was formally notified of the charges and that Tulane investigator, Jacquelyn "Jackie" Barber would conduct the investigation.[37]

To begin her investigation, Investigator Barber interviewed Ms. Doe on February 16, 2022.[38] Ms. Doe explained that she and Plaintiff first had consensual sex on the evening of February 2nd into February 3rd, 2022.[39] Plaintiff then asked if they could have sex again repeatedly to which Ms. Doe said no.[40] Ms. Doe stated that she woke up to Plaintiff "jerking off" and that that Plaintiff proceeded to take a blanket off of her body, touch her private area with his penis, and squeeze her legs and butt.[41] Ms. Doe stated she felt scared and did not know what to do so she pulled the blanket back over her, but Plaintiff proceeded to pull the blanket off of her and continued "jerking off."[42]

Investigator Barber also interviewed Ms. Roe on February 16, 2022.[43] Ms. Roe told Investigator Barber that she and Plaintiff had consensual sex on the evening of August 23rd into 24th of 2021, they fell asleep, and she woke up to Plaintiff's fingers inside of her vagina.[44] Ms. Roe stated

---

[34] *See* **Ex. A**, Plaintiff's Nov. 7 Depo. at 39:3-43:2; *See* **Ex. A-4**, Plaintiff's Nov. 7 Depo. Ex. 4 & Plaintiff's Depo. Ex. 5 (Plaintiff's Advisor Form), attached as **Exhibit A-5**.
[35] *See* **Ex. A**, Plaintiff's Nov. 7 Depo. at 43:21-45:17 & Plaintiff's Nov. 7 Depo. Exs. 5 and 6, **Ex. A-5 and A-6**.
[36] *See* **Ex. F**, Dr. Zacharda's Depo. at 296:24-297:16.
[37] *Id.* at 55:13-56:14; 60:16-61:20 & *See* **Ex. A-1**, Plaintiff's Nov. 7 Depo. Ex. 8 (Letter to Plaintiff from Tulane's Office of Student Conduct Notification of Investigation and Charges dated February 18, 2022) attached as **Ex. A-9**; *See* **Ex. F**, Dr. Zacharda's Depo. at 105:4-19.
[38] *See* **Ex. E**, Jane Doe's Depo. at 243:4-12 & *See* **Ex. E-1**, Jane Doe's Depo. Ex. 22, pages 1-21.
[39] Jane Doe's Depo. Ex. 22, pages 1-21.
[40] *Id.* page 3.
[41] *Id.*
[42] *Id.*
[43] *See* **Ex. B**, Sue Roe's Depo. at 95:4-96:7 & *See* **Ex. B-1**, Sue Roe's Depo. Ex. 16, pages 1-17.
[44] **Ex. B-1**, page 1.

#5965516v1

that she pushed Plaintiff off of her and told Plaintiff she did not want it, but Plaintiff proceeded to put his fingers back inside of her.[45] Ms. Roe pushed Plaintiff off of her again—to no avail—as Plaintiff put his fingers inside of her a third time.[46] Ms. Roe explained that she proceeded to throw herself out of the bed and, while putting clothes on, saw Plaintiff masturbating while staring at her.[47] Ms. Roe then went to find a roommate to kick Plaintiff out of her house.[48] She stated that Plaintiff texted her shortly after the assault stating he did not like the way they had left things.[49] She responded to Plaintiff that she woke up to him trying to get her to "have sex" with him and explained to Investigator Barber that she did not explicitly say she woke up with his hand/fingers inside of her vagina because it felt dirty.[50]  In response, Plaintiff sent a long apology text to her.[51]

Ms. Roe submitted Plaintiff's apology text to Investigator Barber as part of the investigation.[52] In the text on September 1, 2021, Plaintiff admitted the following to Ms. Roe:

> I can't even begin to express how sorry I am. That message left me stunned and heartbroken. I've tried putting myself in your shoes and can't even imagine the fear you must've felt. It's a situation I never thought I was capable of putting someone in, and I'll be forever sorry for making someone I care about feel so scared of me and violated by me. I understand the resentment you likely have towards me and I know there's nothing I can do to undo this situation – something that is infinitely more unfair to you than me. I clearly have reflecting and growing to do, so that the trauma I have caused you won't ever happen to anyone else. That wasn't the conscious me who did that and that is the problem, and it's not something either of us can take solace in. You don't owe me anything and never will, but I hope you know I'll apologize to you at every opportunity you'd let me. My hope is that this doesn't define me as a person in your mind, but clearly my actions have made that out of my control. I'm happy you're safe right now. I recognize the pain I've caused you and apologize for my actions. I don't

---

[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] *Id,* page 2.
[50] *Id.*
[51] *Id.*
[52] **Ex. B-1**, page 7; *See* **Ex. B**, Sue Roe Depo. at 115:12-116:25 & Sue Roe Depo. Ex. 23 (Plaintiff's Apology Text to Sue Roe), attached as **Exhibit B-3**.

6

think I've ever been more sorry for anything in my life.[53]

Ms. Roe also told Investigator Barber that she noticed bruises in her groin area from the assault in the following days[54] and submitted photos of those bruises to Investigator Barber.[55]

### IV.    Tulane considers all witnesses and evidence offered by Plaintiff and his attorneys during the investigation.

Investigator Barber attempted to interview Plaintiff as early as February 18, 2022.[56] On March 3, 2022, Plaintiff advised Investigator Barber that he would not be participating in an interview until he received answers to "procedural questions" raised by his lawyers, Mr. Miltenberg, Diana Warshow, and Marybeth Sydor.[57] Shortly thereafter, Dr. Zacharda, responded to the questions raised by his attorneys.[58] Dr. Zacharda explained that Ms. Roe's and Ms. Doe's complaints had been consolidated as allowed by the Code of Student Conduct and reiterated that Tulane's investigation was being conducted in accordance with the Major Matters process.[59] Plaintiff's attorney requested informal resolution of both complaints, to which both Ms. Roe and Ms. Doe declined.[60]

During the investigation, Tulane issued an interim measure banning Plaintiff from physically being on campus, which is common in sexual assault cases.[61] Even though Plaintiff had already withdrawn from Tulane and moved out of Louisiana,[62] Plaintiff's attorney objected to this interim campus ban.[63] Dr. Zacharda explained to Plaintiff that he could still come on campus as part of the

---

[53] **Ex. B-3.**

[54] *See* **Ex. B-1**, Sue Roe Depo. Ex. 16, page 6.

[55] *Id.* page 9; *See* **Ex. B**, Sue Roe Depo. at 113:23-115:11 & Sue Roe Depo. Ex. 22 (Sue Roe's Bruise Photos caused by Plaintiff), attached as **Exhibit B-4**.

[56] *See* **Ex. A**, Plaintiff's Nov. 7 Depo. at 69:7-23 & Plaintiff's Nov. 7 Depo Ex. 11 (Emails between Plaintiff and Investigator Barber), attached as **Exhibit A-7**.

[57] *See* **Ex. A**, Plaintiff's Nov. 7 Depo. at 76:1-77:14 & Plaintiff's Nov. 7 Depo. Ex. 12 (Plaintiff's March 3, 2022 Email to Investigator Barber declining to be interviewed at that time), attached as **Exhibit A-8**.

[58] *See* **Ex. A**, at 82:15-83:11 & **Ex. A-3**, Plaintiff's Nov. 7 Depo. Ex. 13.

[59] *See* **Ex. A-3**, Plaintiff's Nov. 7 Depo. Ex. 13.

[60] *Id.*

[61] *See* **Ex. A**, Plaintiff's Nov. 7 Depo. at 59:1-16 & Plaintiff's Nov. 7 Depo. Exhibit 8 (Letter to Plaintiff from Tulane's Office of Student Conduct with Notice of Interim Measures dated February 18, 2022), attached as **Exhibit A-9**, & **Ex. F,** Dr. Zacharda's Depo. at 146:1-9 & Erica Woodley's Depo. at 85:5-20; 86:21-87:6, excerpts attached as **Exhibit G**.

[62] *See* **Ex. D-1**, Plaintiff's Nov. 6 Depo. Ex. 27.

[63] *See* **Ex. A-3**, Plaintiff's Nov. 7 Depo. Ex. 13.

7

investigation as long as he gave advance notice.[64] Despite the fact that the deadline to submit an appeal of the interim campus ban had passed, Dr. Zacharda also allowed Plaintiff to submit an untimely appeal to Dean of Students Erica Woodley,[65] which Plaintiff did.[66] Because he was no longer a student and did not reside in Louisiana, Plaintiff appealed the campus ban citing only his desire to participate in events like club baseball and fraternity parties.[67] Dean Woodley denied the appeal.[68]

On March 8, 2022, Plaintiff and his attorney jointly drafted and sent an email to Tulane stating that Plaintiff would not be submitting to an interview with Investigator Barber.[69] Dr. Zacharda explained to Plaintiff that it was his right to decline to be interviewed, but that Tulane's investigation and fact gathering would proceed with or without his interview.[70] Because Plaintiff declined to be interviewed, Investigator Barber submitted a list of written questions to Plaintiff on March 10, 2022.[71] On March 14, 2022, Plaintiff stated he would provide answers to Investigator Barber's questions soon, but failed to do so.[72] Investigator Barber continued with her investigation, interviewed other student witnesses, and circulated a preliminary report to all parties on March 31, 2022.[73]

After receiving the preliminary report, Plaintiff and his attorney wrote an email to Investigator Barber objecting to the report and finally submitting answers to her written questions.[74] In his

---

[64] *Id.*

[65] *Id.*

[66] *See* **Ex. A**, Plaintiff's Nov. 7 Depo. at 86:22-87:20 & Plaintiff's Nov. 7 Depo. Ex. 14 (Plaintiff's March 9, 2022 Appeal of Interim Campus Ban), attached as **Exhibit A-10**.

[67] *See* **Ex. A-10**, Plaintiff's Nov. 7 Depo. Ex. 14.

[68] *See* **Ex. A**, Plaintiff's Nov. 7 Depo. at 88:13-89:8 & Plaintiff's Nov. 7 Depo. Ex. 15 (Denial of Plaintiff's Appeal of Interim Campus Ban), attached as **Exhibit A-11**.

[69] *See* **Ex. A**,. at 90:16-92:25 & Plaintiff's Nov. 7 Depo. Ex. 16 (Plaintiff's Email to Tulane declining to be interviewed), attached as **Exhibit A-12**.

[70] *See* **Ex. A**, at 93:1-94:17 & Plaintiff's Nov. 7 Depo. Ex. 17 (Dr. Zacharda's Response to Plaintiff declining to be interviewed), attached as **Exhibit A-13**.

[71] *See* **Ex. A**, at 97:23-100:8 & Plaintiff's Nov. 7 Depo. Ex. 18 (Investigator Barber's emails Plaintiff questions), attached as **Exhibit A-14**.

[72] *Id.*

[73] *See* **Ex. A**, at 100:18-101:17 & Plaintiff's Nov. 7 Depo. Ex. 19 (March 31, 2022 Letter to Plaintiff from Tulane's Office of Student Conduct with Investigation Update), attached as **Exhibit A-15**.

[74] *See* **Ex. A**, at 104:2-105:9 & Plaintiff's Nov. 7 Depo. Ex. 20 (April 1, 2022 Email from Plaintiff to Investigator Barber answering questions and submitting witnesses), attached as **Exhibit A-16,** & Plaintiff's Nov. 7 Depo. Ex. 22 (Plaintiff's evidence submitted to Investigator Barber marked as Doe_Tulane_00501-00531), attached as **Exhibit A-17**.

#5965516v1

answers, Plaintiff stated that he fully remembered both incidents with Ms. Roe and Ms. Doe, that he had consensual sex with both, and that none of the non-consensual sexual activity alleged by them ever occurred.[75] Plaintiff also submitted a list of 15 witnesses for Investigator Barber to interview, which included other students, his friends, and his roommates.[76] Upon receiving his belated evidence and witness list, Investigator Barber issued a letter to Plaintiff stating that she would review his submissions and update her preliminary report to incorporate his evidence.[77]

### a) Plaintiff's witnesses

Investigator Barber interviewed every witness identified by Plaintiff.[78] Not a single witness supported Plaintiff's version of events.  For example, Plaintiff identified his friend and roommate, Marcus G., as a witness because he lived with Marcus G. during the allegations and discussed the allegations with him.[79]  As set forth in his interview transcript, Marcus G. told Investigator Barber that when Plaintiff received a text from Ms. Doe accusing him of sexual assault, Plaintiff showed him the text, was distraught, and admitted, "I have no idea if I did this" and "if I did, I'm sorry."[80] Marcus G. also explained that Plaintiff told him about the incident with Ms. Roe right after it happened and said Plaintiff "didn't really know what happened, but [] she got mad at him and they kicked him out of the house type of thing."[81] Marcus G. added that Plaintiff "genuinely seemed like he had no idea what happened. He seemed just really upset that he didn't know."[82]

---

[75] *See* **Ex. A-17**, Plaintiff's Nov. 7 Depo. Ex. 22, Doe_Tulane_000519-000531.

[76] *See* **Ex. A-16**, Plaintiff's Nov. 7 Depo. Ex. 20.

[77] *See* **Ex. A**, at 130:14-132:9 & Plaintiff's Nov. 7 Depo. Ex. 23 (April 1, 2022 Letter from Tulane's Office of Student Conduct to Plaintiff), attached as **Exhibit A-18**.

[78] Jackie Barber's Depo. at 97:2; 99:15-21, excerpts attached as **Exhibit H,** & Jackie Barber's Depo. Ex. 10 (Email with Final Investigative Report), attached as **Exhibit H-1**. After submitting the list, Plaintiff removed three witnesses from his original list: Sarah B., Ben M. and Zack N. – who were then not interviewed. *See* **Ex. A**, Plaintiff's Nov. 7 Depo. at 122:3-123:24 & Plaintiff's Nov. 7 Depo. Ex. 21 (Jackie Barber's Email to Plaintiff confirming removal of three witnesses), attached as **Exhibit A-19**.

[79] *See* **Ex. A**, Plaintiff's Nov. 7 Depo. at 105:10-107:8.

[80] *See* **Ex. H**, Jackie Barber's Depo. at 298:5-300:4 & Jackie Barber's Depo. Ex. 33 (Transcript of Interview of Marcus G. during Tulane's investigation), attached as **Exhibit H-2**.

[81] *See* **Ex. H-2**, Jackie Barber's Depo. Ex. 33, page 2.

[82] *Id.* page 3.

9

Plaintiff also identified his friend, Mariska V., as a witness.[83] Plaintiff named Mariska V. as a witness because he had discussed the incident with Ms. Roe with her.[84]  Mariska V. told Investigator Barber that she and Plaintiff did discuss his evening with Ms. Roe and that Plaintiff told her that "anything that she said I did, I did."[85] Based on her conversations with Plaintiff, Mariska V. stated  she "knew that [Plaintiff] had sexually assaulted [Ms. Roe]."[86] Mariska V. further had three or four follow-up conversations with Plaintiff about the assault in which she tried to give Plaintiff advice about how to approach the situation in a respectful way that would give Ms. Roe space but also "tried to understand why and how [Plaintiff] would do this."[87]

Plaintiff identified his friend, Tiffany G, as a witness because he had also discussed his evening with Ms. Roe on August 23-24, 2022 with her.[88]  Tiffany G. told Investigator Barber that Plaintiff admitted that he had been kicked out of Ms. Roe's house that night, but was not sure why.[89] Plaintiff admitted to Tiffany G. that his memory of the event was "iffy."[90] Tiffany G. emphasized that Plaintiff never denied Ms. Roe's allegations to her and that he could never give a straight answer.[91] Tiffany G. also explained that she and Plaintiff had exchanged text messages right after the incident with Ms. Roe and that Plaintiff asked her for advice and if she knew what really happened.[92]  Plaintiff even asked Tiffany G.: "did I do anything you know of" and "did I do something wrongs [sic]."[93]

---

[83] *See* **Ex. H**, at 108:18-24.

[84] *Id.*

[85] Mariska V.'s Depo. at 14:22-15:4, excerpts attached as **Exhibit I,**. and Mariska V.'s Depo. Ex. 1 (Redacted version of Marika V's Transcript of Interview from Tulane's investigation of Plaintiff), attached as **Exhibit I-1**.

[86] *See* **Ex. I-1,** Mariska V.'s Depo. Ex. 1, page 1.

[87] *Id.* page 2.

[88] *Id.*

[89] Tiffany G's Depo. at 18:22-22:16, excerpts attached as **Exhibit J**, & Tiffany G's Depo. Ex. 1 (Tiffany G's Transcript of Interview from Tulane's investigation of Plaintiff), attached as **Exhibit J-1**; Tiffany G. ultimately withdrew her interview because she did not want to be involved as the events made her uncomfortable in general; *see* Tiffany G.'s Depo. at 22:17-26:4 & Tiffany G's Depo. Ex. 2 (Tiffany G's emails with Investigator Barber), attached as **Exhibit J-2**.

[90] *See* **Ex. J-1**, Tiffany G's Depo. Ex. 1, page 2.

[91] *Id.*

[92] Tiffany G. Depo. Ex. 4 (Texts between Plaintiff and Tiffany G. on August 28-29, 2021), attached as **Exhibit J-3**.

[93]  *Id.*

10

#5965516v1

Plaintiff named his friend, Taylor R., as witness who he believed had been in close communications with Ms. Doe both before and after the incident on February 2-3, 2022.[94] In her interview with Investigator Barber, Taylor R. explained that she and Plaintiff had been best friends, and that she had become friends with Ms. Doe through Plaintiff.[95] Taylor R. further explained that when Ms. Doe told her what happened with Plaintiff, it made her remember that Plaintiff had been accused by Ms. Roe of similar conduct, and Taylor R. testified this was partially why she immediately believed Ms. Doe.[96]

Plaintiff also named his friend, Ali S., as a witness because she was close friends with Ms. Roe and he had heard that she posted something referencing sexual assault to social media on or around February 6, 2022.[97] In her interview with Investigator Barber, Ali S. explained that Ms. Roe had sent her a long description of the sexual assault by Plaintiff the morning after it happened on August 24, 2021.[98] Both Ali S. and Ms. Roe provided those texts to Investigator Barber during the investigation.[99] In the texts, Ms. Roe told Ali S that she had a horrible night and that she "woke up to [Plaintiff] trying to fuck [her]" and that she "kept saying no and moving away and [Plaintiff] kept trying" and that the whole time she was getting dressed Plaintiff  "was starring [sic] at [her] jerking off."[100] Ali S. also told Investigator Barber that she knew Plaintiff had been violent because Ms. Roe showed her bruises in her inner thigh area that next morning.[101]

Plaintiff also identified his friend, Madison G., as a witness because he had discussed the

---

[94] *See* **Ex. A**, Plaintiff's Nov. 7 Depo. at 110:6-111:15.
[95] Taylor R. Depo. at 45:9-46:19, excerpts attached as **Exhibit K**, & Taylor R.'s Depo. Ex. 2 (Taylor R.'s Transcript of Interview from Tulane's investigation of Plaintiff), attached as **Exhibit K-1.**
[96] *Id.* Taylor R.'s Depo. Ex. 2, page 1 & **Ex. K**, Taylor R. Depo. at 53:16-54:11.
[97] *See* **Ex. A**, Plaintiff's Nov. 7 Depo. at 111:16-113:11.
[98] Ali S.'s Depo. at 13:8-15:10, excerpts attached as **Exhibit L,** & Ali S.'s Depo. Def. Ex. 1, pages 1-2 (Ali S's Transcript of Interview from Tulane's investigation of Plaintiff), attached as **Exhibit L-1**.
[99] *See* **Ex. L**, Ali S. Depo. at 18:18-19:4 & Ali S. Def. Depo. Ex. 2 (Texts between Ali S. and Sue Roe), attached as **Exhibit L-2**, and *See* **Ex. B**, Sue Roe's Depo. at 25:4-20 & Sue Roe's Depo. Ex. 2 (Texts between Ali S. and Sue Roe), attached as **Exhibit B-5**; *see also* **Ex. H-1** Jackie Barber's Depo. Ex. 10.
[100] *See* **Ex. L-2**, Ali S. Def. Depo. Ex. 2, page 2.
[101] *See* **Ex. L-1**, Ali S.'s Depo. Def. Ex. 1, pages 5-6; see also **Ex. L** Ali S. Depo. at 22:18-23:12.

11

allegations involving Ms. Roe and Ms. Doe with her.[102] Madison G. told Investigator Barber that Plaintiff discussed the allegations involving Ms. Roe with her and that Plaintiff told her that he did not remember much of the incident because he had been drinking.[103] Madison G. also told Investigator Barber that she and Plaintiff hung out after his alleged assault of Ms. Doe and Plaintiff "gave off the same demeanor of not knowing what he had done with a little more detail."[104]

Plaintiff also identified his friend, Katy R., as a witness because he had discussed the allegations involving Ms. Roe with her and she had been in close contact with Ms. Doe.[105] Katy R. told Investigator Barber that she met with Plaintiff shortly after the incident with Ms. Roe and that Plaintiff told her he blacked out and admitted, "Everything she [Ms. Roe] says I did, I admit to doing"[106]" Plaintiff also told Katy R. that he sent the apology text to Ms. Roe and said it was "the worst mistake of his life."[107]  These are the most relevant witnesses identified by Plaintiff.  The remaining witnesses identified by Plaintiff were interviewed by Investigator Barber, but had no knowledge of the sexual assaults and did not corroborate or support Plaintiff's claim that the two women were fabricating the sexual assaults.[108]

### b) *Plaintiff's evidence*

Plaintiff also submitted documentary evidence to Investigator Barber on both April 1, 2022 and April 14, 2022.[109]  Plaintiff's first batch of evidence included a Lyft receipt from January 29,

---

[102] *See* **Ex. A**, Plaintiff's Nov. 7 Depo. at 117:24-118:13.

[103] *See* **Ex. H**, Jackie Barber's Depo. at 291:14-294:15 & Jackie Barber's Depo. Ex. 31 (Madison G.'s Transcript of Interview from investigation of Plaintiff), attached as **Exhibit H-3,** pages 3-5.

[104] Jackie Barber's Depo. Ex. 31, page 4.

[105] *See* **Ex. A**, Plaintiff's Nov. 7 Depo. at 118:14-119:12.

[106] *See* **Ex. H**, Jackie Barber's Depo. at 294:22-297:23 & Jackie Barber's Depo. Ex. 32 (Katy R.'s Transcript of Interview from investigation of Plaintiff), attached as **Exhibit H-4,** pages 2 and 5.

[107] Jackie Barber's Depo. Ex. 32, page 5.

[108] *See, e.g.* Harrison W.'s Depo. at 37:4-22; 87:15-89:12, excerpts attached as **Exhibit M**, & Harrison W.'s Depo. Ex. 1 (Harrison W.'s Transcript of Interview from Tulane's investigation of Plaintiff), attached as **Exhibit M-1**; Will R's Depo. at 29:19-31:23, excerpts attached as **Exhibit N**; & Will R.'s Depo. Ex. 1 (Will R.'s Transcript of Interview from Tulane's investigation of Plaintiff), attached as **Exhibit N-1;** Luca B.'s Interview Transcript from Tulane's Investigation, attached as **Exhibit T;** S S's Summary of Phone Call with Investigator Barber, attached as **Exhibit U;** Brandon I's Interview Transcript from Tulane's Investigation attached as **Exhibit V.**

[109] *See* **Ex. A**, Plaintiff's Nov. 7 Depo. at 124:1-125-8 & **Ex. A-17** Plaintiff's Nov. 7 Depo. Ex. 22.

12

2022 when he and Ms. Doe went to a social event at the local racetrack.[110] Plaintiff submitted the Lyft receipt to show that he and Ms. Doe had known each other previously, which was not in dispute.[111] Plaintiff also submitted a Lyft receipt from August 24, 2021 showing that Plaintiff went back to Ms. Roe's house that evening, which again was not disputed.[112] Plaintiff also submitted a Notice of Signing of Judgment showing the dismissal of a Civil District Court Temporary Restraining Order that Ms. Doe had obtained against Plaintiff from ████████████████ separate from the Tulane investigation.[113] The TRO was dismissed after a week because Ms. Doe failed to appear in court.[114] Plaintiff also provided Ms. Doe's Petition for Protection from Abuse from Plaintiff, which ████████████████ had granted on a temporary basis.[115]

Ultimately, Investigator Barber interviewed every witness identified by Plaintiff, reviewed every document submitted by Plaintiff, and considered all of it as part of her investigation—as set forth in her final investigation report.[116] Plaintiff was also afforded the opportunity to submit questions to both Ms. Doe and Ms. Roe, but chose not to do so.[117] After reviewing the above evidence from Plaintiff, Ms. Roe, Ms. Doe, and the student witnesses, Investigator Barber sent Plaintiff follow up questions on April 5, 2022, including whether Plaintiff expressed memory loss during both incidents.[118] Plaintiff provided written responses to Investigator Barber's questions on April 14, 2022 in which he again denied the allegations and also denied any memory loss.[119]

Plaintiff provided an additional written narrative and videos on April 14, 2022.[120]    In

---

[110] *Id.* at 125:12-126:3 & Plaintiff's Nov. 7 Depo. Ex. 22 at Doe_Tulane_000501.

[111] *Id.*

[112] *Id.* at 126:4-17 & Plaintiff's Nov. 7 Depo. Ex. 22 at Doe_Tulane_000502.

[113] *Id.* at 127:5-21 & Plaintiff's Nov. 7 Depo. Ex. 22 at Doe_Tulane_000503-000504.

[114] *Id.*

[115] *Id.* at 127:22-129:1 & Plaintiff's Nov. 7 Depo. Ex. 22 at Doe_Tulane_000505-000518.

[116] *Id.* at 132:16-22; **Ex. H**, Jackie Barber's Depo. at 300:7-14 & **Ex. H-1,** Jackie Barber's Depo. Ex. 10.

[117] *See* **Ex. A**, Plaintiff's Nov. 7 Depo. at 132:23-133:8.

[118] *Id.* at 133:9-134:3 & Plaintiff's Nov. 7 Depo. Ex. 24 (Investigator Barber's April 5, 2022 email submitting additional questions to Plaintiff), attached as **Exhibit A-20.**

[119] *Id.* at 134:12-135:20 & Plaintiff's Nov. 7 Depo. Ex. 25 (Plaintiff's April 14, 2022 email response to Investigator Barber's additional questions), attached as **Exhibit A-21**.

[120] *Id.* at 136:12-17 & Plaintiff's Nov. 7 Depo. Ex. 26 (Plaintiff's narrative and additional videos submitted as evidence

#5965516v1

Plaintiff's new narrative that he drafted with his attorney, Plaintiff alleged that Ms. Roe and Ms. Doe had motives to lie about him, including that they may have been jealous after seeing him with other girls and/or may have felt romantically rejected by him.[121] With respect to Ms. Roe, Plaintiff claimed they had a complicated past and that she wanted to exclusively date him.[122] With respect to Ms. Doe, Plaintiff claimed that she got angry after seeing him with another girl after they hooked up.[123] However, Plaintiff provided no evidence or witnesses that could support this new theory.[124] Further, Plaintiff continued to claim that he remembered everything from the incidents with both Ms. Doe and Ms. Roe.[125]

Plaintiff also submitted some irrelevant photos and short videos to Investigator Barber on April 14, 2022.[126] The first photo was a screenshot of an Instagram post of Ms. Doe and a student named Libbie A., which Plaintiff stated he provided to show context when Ms. Doe and Libbie A. connected on Instagram and explained that it would serve as a benchmark for when Ms. Roe and Ms. Doe may have connected on Instagram.[127] The other photos consisted of a text thread showing that a ZBT party occurred on February 5, 2022,[128] a receipt from the Palms bar showing Plaintiff had been there on February 3, 2022,[129] a text thread between Plaintiff and Marcus G. that Plaintiff claimed showed the nature of his relationship with Ms. Roe,[130] and a text thread with Katy R. showing that they were downtown on August 23, 2021.[131] Plaintiff also submitted a list of Ms. Doe's followers on Instagram.[132] The videos submitted by Plaintiff consisted of a TikTok that Ms. Doe posted stating

---

to Investigator Barber Bates Doe_Tulane_001226-Doe_Tulane_001262), attached as **Exhibit A-22**.

[121] *See* **Ex. A**, Plaintiff's Nov. 7 Depo. at 136:12-138:4 & **Ex. A-22**, Ex. 26, Doe_Tulane_001248-001250.

[122] *Id.*, Doe_Tulane_001234 & 001249-001250.

[123] *Id.,* Doe_Tulane_001248.

[124] Plaintiff's Nov. 7 Depo. Ex. 26, Doe_Tulane_001226-001252.

[125] *Id.*

[126] *See* **Ex. A**, at 135:24-136:4 & **Ex. A-22.**

[127] *Id.* at 141:12-142:17 & **Ex. A-22** at Doe_Tulane_001253.

[128] *Id.* at 144:3-24 & **Ex. A-22** at Doe_Tulane_001255.

[129] *Id.* at 144:25-145:9 & **Ex. A-22** at Doe_Tulane_001256.

[130] *Id.* at 145:10-20 & **Ex. A-22** at Doe_Tulane_001257.

[131] *Id.* at 147:11-25 & **Ex. A-22** at Doe_Tulane_001259.

[132] *Id.* at 149:7-151:3 & **Ex. A-22** at Doe_Tulane_001261-001262.

14

#5965516v1

you "can't give consent when you're asleep" which Plaintiff believed referenced him[133] and a video of Libbie A. and Ms. Doe at a party on date of Instagram photo.[134]

After receiving Plaintiff's additional evidence on April 14, 2022, Investigator Barber issued another letter to Plaintiff explaining that she had added all of the new evidence submitted by Plaintiff and gave Plaintiff, Ms. Roe, and Ms. Doe a week to review and respond to the evidence or submit questions to other parties.[135] Plaintiff objected as he did not want Ms. Roe and Ms. Doe to have the same opportunities he was receiving in reviewing and responding to the evidence.[136] Plaintiff and his attorney then drafted a complaint to Dr. Zacharda alleging that Investigator Barber was biased.[137]

## V.    Tulane finds Plaintiff responsible for sexually assaulting Sue Roe and Jane Doe and disciplines him.

After considering all evidence, Investigator Barber found Plaintiff responsible by a preponderance of the evidence of sexually assaulting Ms. Roe and Ms. Doe, and she issued a report memorializing her findings.[138] Her 39-page Final Investigative Report attached as **Exhibit H-1** speaks for itself as to all the evidence against Plaintiff.[139]  In a nutshell, Investigator Barber found that Ms. Roe's interview was materially consistent with her written incident report, that several witnesses corroborated her report, and that Plaintiff's own text messages, especially his text message apology to Ms. Roe, supported Ms. Roe's account that Plaintiff had sexually assaulted her.[140] Further, Plaintiff's own text messages between himself and Tiffany G. asking if she knew

---

[133] *Id.* 142:18-144:2 & **Ex. A-22** at Doe_Tulane_001254.
[134] *Id.* 148:1-149:6 & **Ex. A-22** at Doe_Tulane_001260.
[135] *See* **Ex. A,** Plaintiff's Nov. 7 Depo. at 151:12-152:6 & Plaintiff's Nov. 7 Depo. Ex. 27 (Jackie Barber's April 14, 2022 letter issued to Plaintiff), attached as **Exhibit A-23**.
[136] *Id.* at 153:5-154:9 & Plaintiff's Nov. 7 Depo. Ex. 29) (Plaintiff's April 15, 2022 Response to Investigator Barber and her reply), attached as **Exhibit A-24**.
[137] *Id.* at 163:20-164:13 & Plaintiff's Nov. 7 Depo. Ex. 30 (Plaintiff's April 15, 2022 Complaint to Dr. Zacharda about Investigator Barber) attached as **Exhibit A-25**.
[138] *See* **Ex. H,** Jackie Barber's Depo. at 289:3-13 & Jackie Barber's Depo. Exs. 10 & 29, **Ex. H-1** (Final Investigative Report pages 38-39) **& H-5** (Barber's Response to Plaintiff's Appeal), & **Ex. A,** Plaintiff's Nov. 7 Depo. at 167:8-169:13.
[139] *Id.* Jackie Barber's Depo. Ex. 10
[140] *Id.,* pages 33-34.

15

#5965516v1

what had happened on the night in question indicated a lack of memory by Plaintiff and were materially inconsistent with Plaintiff's narrative to Investigator Barber that he remembered everything and that the women were lying.[141] Further, many of Plaintiff's own witnesses stated that Plaintiff indicated to them that he was drunk and did not remember anything —again in contradiction to Plaintiff's narrative to Investigator Barber during the investigation.[142] For those reasons, coupled with Ms. Roe's corroborating witnesses, Investigator Barber found Ms. Roe to be more credible than Plaintiff.[143]

Investigator Barber also found that Ms. Doe's interview was materially consistent with her written incident report.[144] Plaintiff's witnesses provided numerous inconsistencies between his own statements, particularly Marcus G. who had said that Plaintiff contemporaneously told him that he did not remember anything regarding the incident with Ms. Doe and admitted, "I have no idea if I did this" and "if I did, I'm sorry."[145]  Similarly, Madison G. had told Investigator Barber that she and Plaintiff hung out after his alleged assault of Ms. Doe and Plaintiff  appeared to not remember or know what he had done to Ms. Doe – which again contradicted Plaintiff's narrative that he remembered it all and that the assaults did not occur.[146]  Further, Investigator Barber found that Plaintiff's claim that Ms. Doe made up the allegations because she was jealous was highly unlikely under the totality of the circumstances.[147]

After determining that Plaintiff was responsible for sexually assaulting both female students, Investigator Barber reviewed the parties' impact statements to help determine the

---

[141] *Id.* pages, 34-35.
[142] *Id.*
[143] *Id.* pages 35-36.
[144] *Id.* pages 36-38.
[145] *See* **Ex. H,** Jackie Barber's Depo. at 298:5-300:4 & **Ex. H-2** Jackie Barber's Depo. Ex. 33 (Transcript of Interview of Marcus G. during Tulane's investigation).
[146] *See* **Ex. H-3,** Jackie Barber's Depo. Ex. 31, page 3-5.
[147] *Id.*

16

#5965516v1

appropriate sanction against Plaintiff.[148] Investigator Barber ultimately issued the sanction of expulsion, in part because Plaintiff's continued behavior and lack of accountability provided no assurance that he could safely return to the Tulane community.[149] Once Investigator Barber decided on a sanction of expulsion, Dr. Zacharda sent Investigator Barber's report to then Vice President for Student Affairs, Dusty Porter, as it was protocol to have him approve any expulsions.[150] Mr. Porter approved.[151]

Plaintiff received notice of the outcome of the investigation on May 6, 2022.[152] Because Plaintiff had enough credits at that time to graduate, he did receive his degree.[153] In accordance with the process outlined in the Tulane Code of Student Conduct, Plaintiff appealed the outcome of Tulane's investigation.[154] Plaintiff's appeal went before a three-person panel, comprised of Tulane faculty members and staff, and overseen by a non-voting appellate chair, Avery Pardee.[155] The three-person appeal panel reviewed the final report, all evidence, his appeal, and Tulane staff members' responses to the appeal.[156] The appeal panel convened on June 17, 2022 and unanimously denied Plaintiff's appeal on every issue.[157] Ms. Pardee drafted the Appeal Rationale—which is attached as **Exhibit P-2** and rejects many of the same misplaced arguments that Plaintiff now raises in this lawsuit.[158] Plaintiff received the outcome of his appeal on June 21,

---

[148] *Id.* at 39 and Sue Roe's Depo. Ex. 25 (Sue Roe's Impact Statement), attached as **Exhibit B-6**.

[149] *Id.*

[150] Dusty Porter's Depo. at 41:11-44:16, excerpts attached as **Exhibit O,** & Dusty Porter's Depo. Ex. 1 (Dr. Zacharda's emails with Dusty Porter on May 3, 2022 regarding Plaintiff's expulsion), attached as **Exhibit O-1**.

[151] Dusty Porter's Depo. Ex. 3 (Dusty Porter's approval of Plaintiff's expulsion), attached as **Exhibit O-2**.

[152] *See* **Ex. A,** Plaintiff's Nov. 7 Depo. at 166:1-167:4 & Plaintiff's Nov. 7 Depo. Ex. 31 (Tulane's Notice of Outcome Letter to Plaintiff), attached as **Exhibit A-26**.

[153] *Id.* at 177:10-16.

[154] *Id.* at 173:17-174:10 & Plaintiff's Nov. 7 Depo. Ex. 32 (Plaintiff's Appeal of Tulane's Investigation), attached as **Exhibit A-27**.

[155] Avery Pardee's Depo. at 17:16-24; 56:11-57:18, excerpts attached as **Exhibit P**.

[156] *Id.* at 29:10-12; 54:11-55:1; 66:25-67:6 & Avery Pardee's Depo. Ex. 9 (Julia Broussard's Response to Plaintiff's Appeal), attached as **Exhibit P-1**; **Ex. H-5,** Jackie Barber's Depo. Ex. 29; **Ex. F**, Dr. Zacharda's Depo. at 272:11-24 and Dr. Zacharda's Depo. Ex. 45 (Dr. Zacharda's Response to Plaintiff's Appeal), **Ex. F-1**.

[157] *See* **Ex. P,** at 56:10-57:18; 82:10-21.

[158] *Id.* at 85:17-86:4 & Avery Pardee's Depo. Ex. 15 (Avery Pardee's Appeal Rationale), attached as **Exhibit P-2**.

#5965516v1

2022, which resulted in a notation of expulsion on his academic transcript.[159]

## LAW AND ARGUMENT

### I.    Summary-Judgment Standard.

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in a light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).  Initially, the movant bears the burden of presenting the basis for the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When a party seeks summary judgment on an affirmative defense, the movant "must establish beyond peradventure all of the essential elements" of the defense to warrant judgment in his favor. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute for trial. Fed. R. Civ. P. 56(c).

### II.    Plaintiff's breach of contract claim fails as a matter of law.

For Plaintiff to succeed on his breach of contract claim, he must show: (1) Tulane undertook an obligation to perform; (2) Tulane failed to perform the obligation; and (3) Tulane's failure to perform resulted in damages to Plaintiff. *Denham Homes, L.L.C. v. Teche Fed. Bank*, 182 So. 3d 108, 119 (La. App. 1 Cir. 9/18/15).  As an initial matter, Tulane disputes that university policies, particularly the Code of Conduct, create a contractual relationship.  *See Anyadike, v. Coll.,* No. 7:15-cv-00157, 2016 WL 7839183, at *6 (N.D. Tex. 2016) (holding that a university's student bulletin or handbook does not constitute a contract between the university and the student).   It is clear in the Code of Student Conduct that "Tulane University may choose to apply the Tulane Code at any time and in any context in which the University has an identifiable interest" and "[t]he Director of Student

---

[159] *See* **Ex. A,** Plaintiff's Nov. 7 Depo. at 176:18-177:9 & Plaintiff's Nov. 7 Depo. Ex. 33 (Notice of Outcome of Plaintiff's Appeal), attached as **Exhibit A-28**.

18

#5965516v1

Conduct or designee has discretion, subject to discretionary review by the Vice President for Student Affairs, to determine the jurisdiction and parameters of the Code."[160]  The Code expressly reflects discretionary review by Tulane and no provision indicates an intent by Tulane to be contractually bound.

Even if there was a valid contract, there is no breach because Tulane substantially complied with its policies.  "To state a breach of contract claim based on university regulations, 'the plaintiff must do more than merely allege that a promise was inadequately performed; plaintiff must point to an identifiable contractual promise that the defendant failed to honor.'" *Doe v. Loyola Univ.*, No. CV 18-6880, 2020 WL 1030844, at *9 (E.D. La. Mar. 3, 2020) (internal citations omitted). "The Court then considers whether the university made an objective good faith effort to perform its contractual promise." *Id.*   "When reviewing a university's decision to dismiss a student, the Court should intervene only if an institution exercises its discretion in an "arbitrary or irrational fashion." *Id.* "Unless Tulane's system consistently results in decisions which are arbitrary and capricious, it should be allowed to operate without interference from the judiciary." *Ahlum v. Adm'rs of Tulane Educ. Fund*, 617 So. 2d 96, 100 (La. App. 4th Cir. 1993).  Indeed, Tulane as a private institution "is entitled to the very strong (though rebuttable) presumption that its internal administrative actions are taken in absolute good faith and for the mutual best interests of the school and the student body." *Flint v. St. Augustine High School,* 323 So. 2d 229, 235, n. 1 (La. App. 4th Cir. 1975).

Here, Plaintiff cannot offer any evidence that Tulane deviated from its Code, let alone that it acted in an arbitrary or irrational fashion. As detailed *supra* at pp. 3-18, Tulane's investigation proceeded under the Code's Major Matters process, and Plaintiff was afforded every right (and then some) under that process.  While Plaintiff objects to the consolidation of Ms. Roe's and Ms. Doe's

---

[160] *See* **Ex. A-2,** Plaintiff's Nov. 7 Depo. Ex. 7, pages 5-6.

19

complaints, the Code clearly allows such consolidation "[a]t the discretion of the University."[161]

Investigator Barber attempted to interview Plaintiff as part of the investigation, but it was Plaintiff

who refused.[162]  Investigator Barber delayed her investigation to consider belated evidence offered

by Plaintiff.[163]  Investigator Barber interviewed every witness identified by Plaintiff and considered

every document submitted by Plaintiff.[164]  Plaintiff could have submitted questions to both Ms. Doe

and Ms. Roe, but chose not to.[165]  Dr. Zacharda allowed Plaintiff to submit an untimely appeal of his

interim campus ban while the investigation was pending.[166]  Based on the evidence, Investigator

Barber found Plaintiff responsible by a preponderance of the evidence of sexually assaulting Ms. Roe

and Ms. Doe and issued a detailed report memorializing her findings.[167]  Plaintiff exercised his right

under the Code to appeal her findings.[168] Tulane explained its rationale denying Plaintiff's appeal.[169]

Because Tulane complied with its Code and certainly did not act in an arbitrary or irrational fashion,

there can be no breach.

## III.    Plaintiff's Title IX claim fails as a matter of law.

Title IX states in relevant part that "[n]o person in the United States shall, on the basis of sex,

be excluded from participation in, be denied the benefits of, or be subjected to discrimination under

any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

Courts previously applied "a number of doctrinal tests onto Title IX's language to aid in its application

to school disciplinary proceedings." *Doe v. William Marsh Rice Univ*., 67 F.4th 702, 709 (5th Cir.

---

[161] *See* **Ex. A-2,** Plaintiff's Nov. 7 Depo. Ex. 7, page 14.
[162] *See* **Ex. A,**. at 90:16-92:25 & **Ex. A-12** Plaintiff's Nov. 7 Depo. Ex. 16 (Plaintiff's Email to Tulane declining to be interviewed).
[163] *Id.* at 130:14-132:9 & **Ex. A-18** Plaintiff's Nov. 7 Depo. Ex. 23 (April 1, 2022 Letter from Tulane's Office of Student Conduct to Plaintiff).
[164] *Id.* at 132:16-22; **Ex. H,** Jackie Barber's Depo. at 300:7-14 & **Ex. H-1,** Jackie Barber's Depo. Ex. 10.
[165] *See* **Ex. A,** Plaintiff's Nov. 7 Depo. at 132:23-133:8.
[166] *Id.*
[167] *See* **Ex. H-1,** Jackie Barber's Depo. Ex. 10, pages 38-39.
[168] *Id.* & **Ex. A-27** Plaintiff's Nov. 7 Depo. Ex. 32, pages 1-35.
[169] *Id.* & **Ex. P-2** Avery Pardee's Depo. Ex. 15, pages 1-17.

#5965516v1

2023). But the Fifth Circuit "has recently joined a growing number of Circuits to recognize that, while sometimes helpful, these tests do not abrogate Title IX's basic analytical framework." *Id.* Rather, "[a]ll of these categories simply describe ways in which a plaintiff might show that sex was a motivating factor in a university's decision to discipline a student." *Id.* (quoting *Doe v. Purdue Univ.,* 928 F.3d 652, 667 (7th Cir. 2019)) (Barrett, J.); *see also Van Overdam v. Tex. A&M Univ.,* 43 F.4th 522, 527 (5th Cir. 2022). The Fifth Circuit set forth the controlling standard at summary judgment: "the operative question for summary judgment [is whether] a reasonable jury—presented with the facts alleged—[could] find that sex was a motivating factor in the University's decision." *Id.* (internal quotations omitted). As explained *supra*, at pp. 7-17, Investigator Barber's findings were based on the overwhelming evidence—including the testimony of Plaintiff's own witnesses and his text messages—and any allegations of "bias" fail for a variety of reasons.

    a.  **<u>Alleged procedural errors are insufficient to show bias by Tulane.</u>**

As set forth *supra*, at pp. 7-15, Plaintiff was afforded all rights and process under the Code of Student Conduct, and he cannot point to any substantial deviation from the Code or other procedural error by Tulane in applying its own process. And regardless, "procedural errors are not inevitably a sign of sex bias." *Roe v. St. John's Univ.*, 91 F.4th 643, 654 (2d Cir. 2024) (quoting *Doe v. Stonehill Coll., Inc.*, 55 F.4th 302, 334 (1st Cir. 2022); *see also Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292 (1998) (holding that even a school's failure to follow a Title IX regulation "d[id] not itself constitute 'discrimination' under Title IX"). Even if Plaintiff could point to a procedural error, he cannot link any such error as due to his sex. *Austin v. Univ. of Or.*, 925 F.3d 1133, 1138 (9th Cir. 2019) (explaining that the plaintiffs had failed to state a Title IX claim "because the [plaintiffs] d[id] not articulate any basis to discern that the administration or outcomes of the disciplinary proceedings were flawed due to the [plaintiffs]' sex"); *Doe v. Colgate Univ.,* 760 F. App'x 22, 32 (2d Cir. 2019) (holding that the Dean's decision to consolidate three Title IX complaints against Plaintiff "d[id] not

21

raise a genuine issue that [she] was motivated by gender bias, especially because [she] provided legitimate, gender-neutral explanations to support her decision.").

### b. Investigator Barber and Tulane Administrators were not biased.

There is no record evidence that Investigator Barber or any of the administrators involved in Plaintiff's case were biased against men. Plaintiff first tries to ascribe gender bias to Investigator Barber, but has no evidence to suggest that she would have treated a female student accused of sexual assault any differently than Plaintiff. Notably, the undisputed evidence shows that in at least four other investigations at Tulane, Investigator Barber found men accused of sexual misconduct not responsible.[170] There is also no evidence that the investigation itself was gender biased. As previously noted, Investigator Barber interviewed every witness suggested by Plaintiff and considered every piece of evidence offered by Plaintiff.[171] She even delayed her investigation in order to accommodate late-submitted evidence by Plaintiff—a privilege that was not afforded to the two female complainants.[172] It was the evidence, particularly the statements of Plaintiff's own witnesses and his own text messages (i.e., his apology text to Ms. Roe) that caused Investigator Barber to find him responsible—not any alleged bias against men.[173] Investigator Barber confirmed she conducted the investigation "with a presumption of no wrongdoing" and "free of gender bias."[174]

Plaintiff also cannot ascribe gender bias to any Tulane Administrator. First, it should be noted that Investigator Barber was the sole adjudicator who made the decision as to whether Plaintiff was responsible for the sexual assaults and the sanction of expulsion.[175] While other Tulane Administrators such as Dr. Zacharda, Dean Woodley, Mr. Porter, and Julia Broussard (Tulane Title IX Coordinator) reviewed her final written report for typos and otherwise were in place to ensure that

---

[170] Tulane's Response to Plaintiff's Interrogatories, at Doe_Tulane_004759-004762, enclosed as **Exhibit Q**.
[171] *See* Factual Background, Section IV.
[172] *See* **Ex. A-3, A-16, and A-18,** Plaintiff's Nov. 7 Depo. Exs. 13, 20 and 23.
[173] *See* **Ex. H-1,** Jackie Barber's Depo. Ex. 10.
[174] *See* **Ex. H-5,** Jackie Barber's Depo. Ex. 29, pages 1-6.
[175] *See* **Ex. H,** Jackie Barber's Depo. at 41:23-42:1.

#5965516v1

Tulane's policies were being followed, none were involved in the investigation or made any decision as to the outcome.[176]  In accordance with Tulane practice and policy, Mr. Porter did approve Investigator Barber's sanction of expulsion—but made clear he had no authority to second guess or re-do her investigation.[177]  It is irrelevant as to whether non decision-makers had any bias.  And regardless, Plaintiff has shown no bias by any Tulane Administrator.

Plaintiff has complained that some Tulane Administrators met with Ms. Doe during the course of the investigation, but they also met via Zoom and communicated with Plaintiff throughout the process, and Dean Woodley testified that she is available for any student during the student conduct process – complainants and respondents.[178]  For example, in Spring 2022, Ms. Doe asked for and attended various meetings with Ms. Broussard to understand privacy laws[179] and Dean Woodley to provide feedback on improving Tulane's processes.[180] On April 11, 2022, Ms. Doe also attended a small student roundtable discussion with Tulane Administrators for the purpose of discussing Tulane's alcohol and sexual misconduct report processes, but both male and female students attended that meeting, and no specific conduct cases were discussed.[181]  In Spring 2022, Ms. Doe was a current student (unlike Plaintiff who had withdrawn and left Louisiana), and there is nothing discriminatory about allowing a current student access to Tulane programming and resources.

Plaintiff raised these same bias claims in his appeal to Tulane and they were rejected there too.[182] As noted in Tulane's Appeal Rationale, many of Plaintiff's bias claims were against Tulane

---

[176] *See* **Ex. H,** Jackie Barber's Depo. at 41:14-43:16; **Ex. R**, Julie Broussard's Depo. at 161:22-162:15; **Ex. F,** Dr. Zacharda Depo. at 296:24-297:16; **Ex. G,** Erica Woodley's Depo. at 160:21-162:17, **Ex. O,** Dusty Porter's Depo. at 40:23-41:10.

[177] *See* **Ex. O,** Dusty Porter's Depo. at 44:19-46:18.

[178] *See* **Ex. F,** Dr. Zacharda's Depo. at 69:3-70:9; **Exs. A-7, A-8, A-3, A-20, A-21,A-22** Plaintiff's Nov. 7 Depo. Exs. 11, 12, 13, 16, 25, 26; **Ex. G** Dean Erica Woodley's Depo. at 33:18-34:13; 59:23-62:3.

[179] *See* **Ex. R,** Julia Broussard's Depo. at 112:15-113:15; 131:12-134:2.

[180] *See* **Ex. G,** Dean Erica Woodley's Depo. at 112:16-116:3.

[181] *See* **Ex. G,** Dean Erica Woodley's Depo. at 137:17-140:7; **Ex. F,** Dr. Zacharda's Depo. at 196:15-197:20; **Ex. R,** Julia Broussard's Depo. at 175:18-177:23; 180:8-185:3.

[182] *See* **Ex. A,** Plaintiff's Nov. 7 Depo. at 163:20-164:13 & **Ex. A-25 & A-27** Plaintiff's Nov. 7 Depo. Exs. 30 & 32.

#5965516v1

Administrators who were not involved in the investigation.[183] Plaintiff has since complained that one of the three panelists, Anthony Ciliberto (formerly Tulane Director of Fraternity and Sorority Life) was biased because he previously hosted a student program called the MENtality Project (MEN for Mentorship, Engagement, and Networking).[184]  But the MENtality Project was open to male and female students, discussed healthy/unhealthy gender identities, and created a safe space for male (and female) *victims* to come forward to report sexual assault.[185]  That is insufficient to show bias, *see Doe,* 760 F. App'x at 30 (rejecting claim of gender bias where "President's message noted that both men and women are victims of attempted or actual sexual assault and that all parties to a misconduct complaint deserve to be treated with respect"), and further he was only one of three panelists.[186]

### c.  General campus sentiment is insufficient to show gender bias by Tulane.

Because Plaintiff lacks any evidence of gender bias, he is forced to allege that general sentiment by students somehow created pressure on Tulane to punish male students for sexual misconduct.  Plaintiff has pointed to student protests in 2021 in which students wanted "rapists" held accountable, student journalism articles, and general campus climate.[187]  But Plaintiff cannot link any of this to gender bias on the part of Tulane during its investigation—particularly where campus climate had no effect on any policy or investigation by Tulane.[188]  As Dean Woodley explained, students often complain and protest about all sorts of issues and have even protested on the opposite side of sexual assault issues, but Tulane applies its policies and conducts its investigations in a fair manner and without regard to the temperature of students at a particular moment.[189]  And general campus climate is insufficient to defeat summary judgment. *Doe,* 760 F. App'x at 30 (holding that

---

[183] *See* **Ex. P-2,** Avery Pardee's Depo. Ex. 15.
[184] *See* **Ex. S,** Anthony Ciliberto's Depo. at 19:12-20:21.
[185] *Id.* Anthony Ciliberto's Depo. at 152:12-154:19.
[186] *Id.* and **Ex. P** Avery Pardee's Depo. at 56:11-57:18.
[187] Plaintiff's Complaint, Section III, ¶¶73-88.
[188] *See* **Ex. R,** Julia Broussard's Depo. at 236:2-237:7.
[189] *See* **Ex. G,** Erica Woodley's Depo. at 155:25-157:12; 213:2-13.

#5965516v1

student programming and university messaging combatting a sexual assault climate "d[id] not give rise to a genuine dispute of material fact that Colgate was under pressure to punish male students for sexual misconduct").

### d. Tulane outcomes confirm no bias.

Plaintiff has also baselessly claimed that Tulane's process consistently disfavors male students,[190] when the opposite is true. In 49 total complaints of sexual assault, sexual misconduct, intimate partner violence, stalking, harassment/intimidation, lewd obscene conduct and related offenses that have been reported to and investigated by Tulane from 2018-2022, only 21 out of 43 or 48%) of male respondents were found responsible.[191] Meanwhile, 5 out of 6 (or 83%) of female respondents were found responsible.[192] While male respondents have been reported to Tulane more frequently than female respondents, Tulane has no control over who is reported and merely investigates if a complainant files a report and wishes to proceed with a formal investigation.[193] This data is fatal to Plaintiff's claim that Tulane's system is somehow rigged to ensure that males are discriminated against.

### CONCLUSION

The undisputed material facts firmly establish that Plaintiff was afforded every process and right entitled to him under the law and Tulane's Code of Student Conduct (and then some) and that Tulane's disciplinary findings were based on the evidence and not some fictional gender bias. Both of Plaintiff's claims fail as a matter of law.

---

[190] See Plaintiff's Complaint, ¶12; *see also* ¶¶ 518, 519, 528.
[191] *See* **Ex. Q,** Tulane Response to Plaintiff's Interrogatory No. 1, produced as Doe_Tulane_004759-004762.
[192] *Id.*
[193] *See* **Ex. G,** Erica Woodley's Depo. at 68:20-23.

25

#5965516v1

Respectfully submitted,

*/s/ Amy L. McIntire*

Julie D. Livaudais (Bar No. 1183)
Amy L. McIntire (Bar No. 35241)
Valerie M. Andrews (Bar No. 39466)
        -of-
**CHAFFE McCALL, LLP**
1100 Poydras Street, Suite 2300
New Orleans, LA  70163-2300
Telephone:  (504) 585-7000
Telefax:  (504) 544-6054
Email:     livaudais@chaffe.com
              mcintire@chaffe.com
              valerie.andrews@chaffe.com

***Attorneys for Defendant, The Administrators of the Tulane Educational Fund***

26

#5965516v1